Thank you very much for having me today. The threshold question for this court is are we going to, is the court going to relinquish to the Federal Communications Commission or other regulatory bodies a decision as to who has a right to file their claim under 207 and 201 for relief under Section 201? In other words, who has a decision-making power to decide who has the private cause of action to come to district court to litigate? Well, you're on the wrong boat already. I don't think we have any power to determine that at all. Congress does. And that's what we're here to decide, what Congress did, not whether we want to grab it or let the FCC have it. So go on someplace else. Somebody has to determine at the trial court level if they're going to, if the judge is going to accept jurisdiction and accept... Congress decided, and we're going to decide what Congress decided, I guess. There we go. Okay. We are in agreement. Thank you, Your Honor. If we follow the respondent's argument, then the court will leave it to the Federal Communications Commission to decide whether or not there is a private right cause of action and not the district court. And that is just not the case. Now, I don't have an Idaho case on point, Your Honor, but I do have the next best thing, a U.S. Supreme Court case. That is close. Yeah, it is. And unfortunately, we didn't have that U.S. Supreme Court case at the time that the original motion dismissal was heard. I did ask the court to stay her ruling to have that opportunity to come down. She didn't. But the second time around, we did have it. Unfortunately, it's not addressed in the second decision on the motion to dismiss. The Ninth Circuit, and I understand the wisdom of referring the Ninth Circuit to a Ninth Circuit case, but I also see the wisdom in referring to the case that the Supreme Court reviewed in the Ninth Circuit, and that is the Global Crossings case, Metrophone's case, Supreme Court case. And in that case, the issue was squarely presented on page 1520. It remains for us to decide whether the particular FCC regulations before us lawfully implements Section 201B's unreasonable practice prohibition. We now turn to that question. And in the next paragraph, the court goes on to say, The determination easily fits within the language of the statutory phrase, that is to say, in ordinary English. One can tell a refusal, one can call a refusal to pay commission or compensation, despite having received a benefit from the payphone operator, a practice in connection with furnishing a communication service that is unreasonable. And in that case, the carrier's refusal, going further down the paragraph, to divide the revenue it receives from the caller with its collaborator, the payphone operator, despite the FCC's regulation requiring to do so, can reasonably be recalled a practice in connection with the provision of that service that is unreasonable. Now, in this case … Well, but the FCC has defined it to be unreasonable in the first instance. I disagree, Your Honor. And then we go to the Supreme Court decision at page 1519. And here is the test. The language makes clear, referring to 207, the language makes clear that the lawsuit is proper if the FCC could properly hold, and that's the key language, could properly hold that a carrier's failure to pay compensation is an unreasonable practice deemed unlawful. So you're suggesting that I'm to second-guess the FCC rather than wait for the FCC to make the determination? Yes. And here's why. Because you have … The case says that. You have considerable reflection from the FCC on similar type cases in order to make a decision. Otherwise, and we have to assume that the Supreme Court uses the language as it's reasonably construed by the dictionary, it would have said, or it should have said, if it was meaning that the FCC must rule in every instance, the FCC, if the FCC did properly hold or had properly held that a carrier's failure to pay compensation is. Now, we have guidance here. We have guidance that the district court did not have in fairness to the district court. We have the PCS decision, and I'm referring to North Carolina Communications versus Metro PCS California LLC, and that decision was supplementally briefed by both sides. We both believe it's entitled to deference, and we wouldn't have cited it. And that court squarely held that they were assuming that a violation of Rule 2011 … Are you talking about the FCC decision, the recent FCC decision? Correct, ma'am. Yes, I'm sorry. Okay. So now what page of that are you relying on? I'm looking at footnote 30, which is on page 4. Okay. The FCC construed, interpreted Rule 2011B that a commercial mobile radio service provider, which the respondents are, shall pay reasonable compensation to a local exchange carrier, and it cites its reasoning, and in a footnote, footnote 30, it says, for purposes of this order only, and here's the guidance that you're entitled to rely on, we assume without deciding that a violation of Rule 2011 would be a violation of the Act. That's not a decision. That's an assumption. Well, it's guidance that, with all due respect, Your Honor, it's the guidance that the district court is looking for from the FCC. There is no holding by the Supreme Court, which is the ultimate authority on this issue, there is no holding, there is no decision by the Supreme Court, that you must have first a decision by the FCC. Otherwise, it's relinquishing, the court's relinquishing its interpretation powers. Okay. Rule 20. Go ahead. You go ahead. Even if the court, district court, could have made that decision, and I'm not sure it could have, but what it did, in part, was to decline to exercise its discretion under the Declaratory Judgment Act to do that. I don't think it had. And I don't think you addressed that in your brief, the fact that that is a discretionary exercise of discretion, exercise of jurisdiction. I do not think that a violation of 201, that Section 207 jurisdiction is discretionary. It's concurrent jurisdiction between the FCC. But the Declaratory Judgment Act under which you're suing is discretionary. We're suing under the Declaratory Judgment Act. We're also suing for the violation of the tariff. That's a state claim. You've got two state claims which depend on supplemental jurisdiction of the federal claim, which is your D.J. claim. No, Your Honor. I disagree. Because we have two claims, one for declaratory relief and one, more than two, but one that seeks damages under the state tariff. And as the Metro PCS case also decided that, while the state PUC can make the determination as to whether or not, when you don't have a tariff in place, which we do, if there's no tariff in place, the state PCU will decide what the reasonable rate is. But you come back to the FCC, a federal regulatory body, and we'll tell you how much is owed. You see, they're only saying the state PUC will decide what the reasonable rate is. They're assuming a 2.1, a 20.11 violation, therefore a 201B violation, and they're saying, come back. We're not going to decide how much you're owed until the PUC decides what the reasonable rate is. In our case. Sorry, I lost you. Who is saying that? The FCC? The FCC in the Metro PCS case is saying, you come back to the federal regulatory body after the state decides what the reasonable rate is, and we'll tell you how much totality is owed. That, I think, is what the defendant is arguing. I understand. But there's concurrent jurisdiction here under 207, and that's spelled out in the Supreme Court case, the Metrophones case. It clearly says that it contemplates on page 1521 that there are tariff issues and there are non-tariff issues. It doesn't make a difference. The tariff issue, just because the tariff issue is a state tariff, doesn't mean that a failure to pay what's reasonably owed under 2011, the CFR, is not properly before the court under 207, 201. And that is, again, it's at page 1520. The only thing to decide is whether or not 201, the regulation, that is 2011, in this case it would be 2011, the regulation before us lawfully implements Section 201B's unreasonable practice prohibition. Counsel, you have four minutes and 55 seconds. Do you want to reserve? Yes. I'm just going to take one more minute, and I'll reserve the rest to my co-counsel. The narrow issue is whether or not 2011B2 lawfully implements Section 201B's unreasonable practice of prohibition. And we have guidance because it is a mandatory obligation to pay, just like in the Global Crossings case by the Supreme Court, if it's a mandatory obligation to pay, which was recognized in the Metro PCS decision, 2011B, shall pay reasonable compensation, then the answer is answered in the affirmative. We understand you. It is. Okay. I'll reserve. Thank you, Mr. Reichman. Thank you. Okay. He comes on. Are you going to do a rebuttal? Rebuttal. Okay. All right. Let's put eight minutes up so that way you don't leak over into the other person's time. Thank you. It's always helpful, assuming I'm going to look at the clock. Good morning. Well, I'll look at it for you. Oh, I'm sure you will. You're the boss. May it please the Court, I'm Gregory J. Kopta of the law firm Davis-Reichman, on behalf of T-Mobile USA, Singular Wireless, and Cricket. Where to begin? Could you start with counsel's reliance on the recent FCC decision as support for his position that there is jurisdiction for declaratory judgment? I would be happy to start there. And first let me start with a clarification, which is that it's not actually a decision of the FCC, it's a decision of the chief of the Enforcement Bureau. So it's not quite yet a commission decision, and that's still in the works. That's something. Oh, absolutely. And I'll be the last to say that the Court shouldn't rely on it. And we, not surprisingly, have a very different view of that particular case than our opponent does. If you look at what the chief of the Enforcement Bureau did, she dismissed the 20.11 claim and denied all of the other claims. So what we have here is a situation in which we've got similar claims to those that were brought here, and the FCC has said, you don't have a claim. Under 20.11, you cannot bring a claim until there is a rate, at least. And, you know, since we're doing dueling warring footnotes, if you'd like to look at footnote 55 in the Enforcement Bureau chief's decision, she says, we make no determination at this time as to whether Rule 20.11 imposes obligations to pay compensation in the absence of an agreement, and if so, on what terms, or alternatively, whether the obligation under Rule 20.11 is a mandate that the parties must enter into an agreement to a reasonable rate of mutual compensation. Counsel, let me ask you this. What's your, I gather, that opposing counsel's position was the tariff rate is the reasonable rate. What's your response to that? Well, the T-Mobile declaratory ruling by the FCC pretty well took care of that. The FCC has determined that a state wireless termination tariff is unlawful as of the date of that order. But was that tariff rate established before the date of that order, and then would that be the rate that's referenced as being the reasonable rate? Well, we've got two different circumstances here. I mean, obviously, when they filed their tariff, it was before the T-Mobile declaratory ruling. And so now the chief of the Enforcement Bureau has said you have to go back to the state and establish a rate before you can bring a claim under 20.11. But if you'll notice in the So you're saying if there was a rate established before the FCC said that was unlawful, that goes away? That's right. And, in fact But still applies up to 2005, but not after, isn't that what you're saying? Well, in our view, it didn't apply. I mean, that's one of the things that's still pending before the FCC to get some clarification on, as to whether that is, in fact, a rate that would be enforceable in any way, shape, or form. But that's not what's before the court right now. Well, it sort of is. It sort of is because the opposing counsel's argument is we had a tariff rate that was in effect. And so that's the reasonable rate that can be used to bootstrap us, if you will, into federal jurisdiction. And that's basically what the argument is, that it's a bootstrap kind of argument. But if you will look at the Enforcement Bureau's decision, we're dealing with the same time frames here, beginning in 2003. There's no reference in this order that the tariff, which apparently, you know, was in existence before the T-Mobile declaratory ruling and was before the Enforcement Bureau, was ever raised as, well, wait a minute, you know, we already have a reasonable rate. So obviously, the Enforcement Bureau, while they didn't address it, implicitly decided that the tariff rate that existed before the T-Mobile declaratory ruling was not what the Enforcement Bureau had in mind. And, in fact, if you will look at the list of state proceedings that she said are possibilities, none of those are tariff proceedings. They are a complaint proceeding. They are a rulemaking. They are sort of a price cost docket, if you will, under the Act. But none of those did she mention would be a tariff, which, of course, you can't have that. Well, if there were a possibility of obtaining the tariff rate for the pre-'05 calls, would that be a state law claim that could be declined as supplemental jurisdiction if there's no federal claim and referred to the state? Well, that's our, you know, our first position is that it is a state law claim. It's a state tariff. And it's not something that you can come to federal court to enforce a state tariff. So you would say it would be dismissed with leave to file in state court as opposed to denied on its merits? Well, and, in fact, there is a state proceeding, a state court complaint proceeding that's sort of parallel to this one. So that's being argued in that forum. But, you know, that's the appropriate forum to deal with that particular claim rather than the federal court. And is that true of the quantum merit claim as well? Yes. That it should be declined, jurisdiction should be declined without prejudice as opposed to denied on the merits? Well, at this point, because it's a state law claim, then what we're saying at this juncture is that there's no jurisdiction because there's no federal claim that you can sort of hitch that particular wagon to to be able to have the federal court make any kind of a determination. But rather the district court's decision was to dismiss that claim because it's a state claim and there's no jurisdiction in the federal court. Well, one can keep a supplemental jurisdiction claim after the federal claim has been denied as a matter of discretion. One might or might not want to do it, but one could do it, I think. Could one not? Well, generally, if there is no federal claim, generally the mandate is to remand the state claims. That's my understanding, that there needs to be at least some federal question before the court before it can exercise supplemental jurisdiction. And that's certainly what our position has been. So as I understand it, your idea is we've got to have some federal claim that is jurisdictional to us, decidable by us, to have state jurisdiction, correct? That is correct. If we don't have that, we can't even get it by supplemental. No, that's our position, and that's certainly what the district court and both district court judges decided. Is it your view that this should be seen as or that the problem with the federal claim should be seen as no private right of action or should it be seen as there isn't a statutory violation? Well, there isn't a statutory violation. The result might be the same, but I'm just wondering in terms of phrasing it, a lot has been talked about in terms of no private right of action, but I'm wondering if it isn't really more a question of is there a statutory violation? Well, in our view, there is no statutory violation. And what NCC is doing is saying, well, look behind the statute and look at what the FCC regulation is, which is 20.11. All right, if we do that, then we see how the FCC has looked at it and how the Enforcement Bureau has looked at it. And they have said there is no claim until you do certain things. One of them is to get a rate. In our view, under the T-Mobile Declaratory Ruling, another is that you have to have an agreement. And neither of those things have happened, and so we don't have a situation here in which any kind of a claim is right. So while there is a general obligation to pay compensation, again, I would refer you to the T-Mobile Declaratory Ruling where the FCC itself characterized its own regulation as saying neither the Commission's reciprocal compensation rules nor the Section 20.11 mutual compensation rules adopted prior to the 1996 Act specify the types of arrangements that trigger a compensation obligation. All right, Counselor, you've exceeded your time. Okay. Thank you. All right, seven minutes. Thank you, Your Honor. Laura Brill on behalf of Cal One Cellular and Celco Partnership. I'd like to turn first to the tariff issue that has been the focus here. First of all, as pled in the complaint, 20.11 is not in the complaint at all. There is a tariff claim in the complaint, and NCC refers to that claim in its brief as a state law claim. That's in its opening brief at page one. The district court regarded it as a state law claim. Federal courts recognize that claims for tariff enforcement are state law claims, and we've cited those in our brief. Beyond that, there does seem to be an effort by the plaintiff to bootstrap this tariff into some kind of claim either under 201 or 20.11. He's saying that's the reasonable rate that can be enforced. So that's not correct, Your Honor. So two points on that, and we do think you would be in a position to deny rather than simply dismiss that claim. The first, the tariff as written doesn't apply to wireless transmissions at all. It's in the record at page 178 of the supplemental excerpts of record, and it refers to NCC terminating local traffic for local exchange carriers and other competitive local carriers. And the term competitive local carriers under state law and within the state POC is a reference to CLEX, like NCC. It's not a reference to CMRS providers. And we construe state tariffs narrowly, and it wouldn't be construed to and you shouldn't construe it to apply to us. And so there's no state tariff in place. Even if there were a state tariff in place that governed CMRS providers, that would not be the simple filing of a state tariff would not give grounds to a federal claim for a CLEX. And there's a number of reasons for that. I think what the plaintiff is trying to do is look at the regulatory background and sort of say, well, there was some kind of regulatory mistake here and there's an absence of regulation, and that somehow gives rise to a new federal cause of action because we've been damaged. But the regulations that are in place and the different levels of obligations that they impose, it's not an accident. It's a reflection of national federal telecommunications policies that puts NCC in the position it is. And so that's why in the T-Mobile order, the FCC said for incumbent local exchange carriers it wouldn't have been improper. They were in that case deciding whether it was unlawful to even file the state tariff. They weren't saying is it unlawful not to pay the state tariff. So they said, no, it wasn't unlawful for an incumbent local exchange carrier to file a state tariff. But they didn't say that about CLECs, and there's a few reasons for that. One is CLEC tariffs in state proceedings don't receive at all the kind of scrutiny that ILEC tariffs do. In addition, ILECs are in a very different posture within the industry than CLECs are. They're subject to a lot more regulation. They have to open, because of the history of telecommunications in this country, ILECs have to open their networks and make them available to people to interconnect with. They have an obligation to bargain in good faith. And so those are some of the reasons that the FCC decided to impose certain obligations and make ILECs subject to regulations that give ILECs certain procedural benefits that CLECs don't have. And that position that we're in, where ILECs can file state tariffs, but the FCC has never said that a CLEC can file a state tariff, puts us where we are. Now, if they could, if the FCC were to say, yes, it would be okay for a CLEC to file a state tariff, we would still be in a position where the FCC would have to decide as a matter of federal policy whether that was a reasonable rate for federal purposes to apply to a CMRS provider. And they could take into account a lot of different factors in that. It wouldn't be just the rate. They could look at things like the imbalance of traffic here. And you saw in the ISP remand order that we submitted that the FCC is very concerned about imbalance of traffic and different entities within the telecommunications industry structuring their business plans essentially to be one-way recipients of traffic in order to try to take advantage through regulatory arbitrage of these payments of fees. And so even if there were a state rate set, the FCC would still, and we think properly, should come in and say, well, there was a state rate set, but you had no obligation to enter an agreement to pay that rate. What statute says that or what case says that that the FCC has to examine a state-filed tariff to determine whether or not that's reasonable compensation? Well, the question would be this. The FCC has said we favor agreements. We don't favor unilateral. I asked you the question. You said that the FCC would have to look at a tariff to see whether or not it was reasonable compensation. And I'm asking you what statute, regulation, or case says that. Well, 20.11, which is what the plaintiff is going under, is a federal statute, excuse me, a federal regulation. So they would not say the question is a federal question of whether under 20.11 whether there's reasonable compensation. And what I'm saying is that it's a matter of federal telecommunications policy. Okay, there's a rate, but what the telecommunications policy is is that you have to have an agreement. We want these different carriers to enter agreements. The agreements cover a lot of different things than just the rate. But that's different than saying that the FCC would have to look at the tariff. The FCC could say that the tariff is the reasonable rate without reexamining the rate. They certainly have not done that, and they've never held that it's somehow that simply because there's a rate filed by a CLEC, there's an obligation of a CMRS provider to enter an agreement to do interconnection and termination at that rate. So I think in light of the imbalance of traffic and the policies. I understand. All right, thank you. Thank you. Rebuttal. Good morning, Your Honors. If I may, I'd like to just clear up a little bit of the federal cause of action off of a state tariff. It seems like that's been an issue throughout a lot of the questions in the court. 2011 provides for a duty that the CMRS carriers must pay reasonable compensation to CLECs, ILECs, to anybody who's terminating their traffic. Under 201, you have the way to enforce that duty. We're not arguing that you couldn't also go to the state, PUC here in California, and make a claim under Public Utilities Code 2106 to enforce the tariff that way. And, in fact, you have, I guess. Right. What we're arguing is that you can elect to do one or the other. You can elect to go under the federal 2011, you know, as lawfully implementing 201, or you can elect to go to the state and enforce the tariff directly. And you've done both. No, we have filed a state court of action because we were concerned that this federal court case that was dismissed, it may not be a tolling of the statute of limitations. We have not undertaken both the PUC action and the federal court action. That's not the case. We've only filed a state court to prevent a problem of the statute of limitations. So, Counsel, you said Regulation 2011 requires payment of what? By whom? 2011 requires payment of termination fees to CLEX. What section are you relying on now? I'm relying on the Metro PCS or the recent FCC. No, no, no. In 2011, what language? 47 CFR Section 2011. What? B. D. E as in boy. No, B. Okay. Sorry. To a local exchange carrier. Right. In connection with terminating traffic that originates on the facilities of the commercial mobile radio service provider. Right. And in the Metro PCS order, page 5, the supplemental authority that was set. Are you a local exchange carrier? Excuse me? Is your client a local exchange carrier? Competitive local exchange carrier. Not yet. On page 5 in the Metro PCS decision here, it clearly states, in turn unless and until what constitutes reasonable compensation for North County's termination of interstate traffic originated by Metro PCS is determined, the commission cannot decide whether or to what extent Metro PCS has violated its duty under 2011 B.2. So the FCC, while they're declining to decide what is reasonable compensation and handing that to the state, which would be decided under state tariff or state reciprocal compensation agreement, is clearly stating that 2011 B.2 imposes the duty to pay on the CMRS provider. So what are you relying on to support a private right of action under 2011? 2011, if you take a look at the T-Mobile declaratory ruling, paragraph 2, 2011 is promulgated under section 201 itself. That would give rise to a right of action under 201 directly, also indirectly via the Supreme Court decision in MetroFOMS that says that the test for determining whether you have a right of action under a regulation lawfully implementing a statute is does the regulation lawfully implement the statute. In this case, the following is true. But section 251 just says that the parties have a duty to enter into compensation arrangements. And we would concede that the Metro PCS order would take away federal jurisdiction, seems to take away federal jurisdiction under 251 for all claims after the T-Mobile declaratory ruling that would rely on reciprocal compensation agreements. Our claim is that the Metro PCS order and MetroFOMS v. Global Crossing clearly say we would have a federal cause of action to enforce the tariff via 2011, implementing 201 for the tariff rates prior to the T-Mobile declaratory. Now, what's your strongest case that supports that argument, that the pre-T-Mobile order tariff rates are enforceable as a matter of federal law? I would have to say that we could go through any number of FCC decisions. What's the strongest one? I think the strongest one would be the Metro PCS decision we cited as supplemental authority, which clearly states that in the case of a contract, not a tariff, in the case of a contract, after you go to the state and determine what reasonable rate is, you can come back to the FCC for enforcement of that reasonable rate under 2011. That doesn't get you into federal court. That does not get you into federal court. It does because in the Metro PCS order, there was no tariff claimed or talked about in this order. With the state tariff, we have a presumptively reasonable rate under the tariff for all traffic terminated before 2005. Okay, I understand your argument. What about counsel's argument that that tariff only applies to cell phones or does not apply to cell phones and only applies to? In Sprint's AT&T v. DTI, which came into this case by secondary citation, dealing with issues of interstate carrier compensation, not CMRS, but long-distance company compensation to CLEX, they decided in those cases that the compensation was owed and could be enforced federally, even if the state had to have a role in determining the rate. But if the rate doesn't even address CMRS cell phones, how do you apply that rate to them? Well, in this case, the rate would address CMRS providers because in this case, the tariff explicitly is a tariff on termination of traffic from CMRS providers. All right. Thank you. Thank you to both counsel. The case that's argued is submitted for decision by the court. Are counsel here for the Williams v. Astrue case? Just one. Just one? Oh, they're both here. Which one was not here at 9 o'clock? Well, you can start by explaining why you weren't here at 9 o'clock. Lesson number one, don't travel on the day of the argument.
judges: Rawlinson, Smith N. R., Wilken